UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

HAIDER TOMAZ,

    Petitioner,

vs.

WILLIE SMITH,

    Respondent.
_____/

Civil Action No. 17-CV-11204

HON. BERNARD A. FRIEDMAN

## OPINION AND ORDER DENYING PETITIONER'S APPLICATION FOR A WRIT OF HABEAS CORPUS, DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY, AND DENYING LEAVE TO PROCEED ON APPEAL IN FORMA PAUPERIS

Petitioner, a Michigan prisoner, has filed an application in this matter for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. He challenges his convictions for second-degree murder and felony-firearm, Mich. Comp. Laws §§ 750.317 and 750.227b. For the reasons stated below, the Court shall deny the application.

### I. Background

Petitioner was convicted following a jury trial in Wayne County Circuit Court. The relevant facts have been summarized by the Michigan Court of Appeals as follows:

> Minutes before the shooting death of Aljibory at his lower-level flat on September 11, 2012, defendant's cellular phone was used in a cellular sector near Aljibory's flat and, at 9:43 p.m., exterior security cameras neighboring Aljibory's flat recorded an SUV pull up near Aljibory's house. Sergeant Robert Wellman, a member of the commercial auto theft section of the Detroit Police Department, reviewed the footage and opined that the SUV was a Cadillac Escalade, made between 2002 and 2006. According to several witnesses, defendant had access to a Cadillac Escalade owned by his mother; one witness saw him driving it earlier that evening.
>
> From her upper-level flat, above Aljibory's flat, Courtney Daniels testified that she heard two gunshots. Daniels testified that she ran

to her bedroom window to see if Aljibory was on the porch; she thought he might know what had happened. Daniels testified that, from the window, she saw defendant walking away from their front door on the walkway, by the driveway. Daniels testified that it was dark outside, but she could see defendant because of a streetlight and a lamp in her apartment; she recognized defendant because she had spoken to him during a barbeque at the flat just three days earlier. At trial, Daniels testified that she was "almost 100 percent positive" of her identification of defendant.

Daniels recalled asking defendant, "[W]hat was that?" Defendant turned and responded, but Daniels did not hear him. Daniels testified that defendant continued walking toward a dark-colored SUV. She testified that it was like the Cadillac Escalade she saw defendant arrive in at the barbeque, but she was unsure if it was the exact vehicle. Daniels testified that she did not see whether defendant entered the SUV because, when he continued walking, she ran out of her apartment and downstairs. She saw Aljibory's door was open about a foot wide and Aljibory was lying on the floor. She called 911 at 9:44 p.m.

A medical examiner testified that Aljibory died as a result of multiple gunshot wounds and the manner of death was homicide. One gunshot entered the inner surface of the left eye and the other entered the left side of the neck—the bullets recovered were .22 caliber. Aljibory had bruising that the medical examiner opined was most likely from falling after the gunshot wounds and blood pooling. On cross-examination, the medical examiner testified that it was possible, but less likely, that the bruising resulted from a fight. The medical examiner testified that the bullets were deformed; they could have been damaged from contact with Aljibory's skull and it was unlikely they were damaged from contact with a wall or the floor .

Search warrants were executed at defendant's house and a family member's house. A key and key fob for an Escalade, along with .22 caliber long rifle ammunition were recovered, but the SUV itself was never found.

On September 15, 2012, defendant was arrested, in Texas, on a Greyhound bus traveling to Mexico. According to Detective Steven David, in an interview, defendant denied any knowledge of a murder in Detroit or Hussain Aljibory and he stated that he did not own or have access to an Escalade, but his mother owned one. Detective David testified that defendant explained that he was riding to

> Phoenix, Arizona to visit a family friend that he could only identify as Muhammad.
>
> At trial, Gerardo Garza testified that he had been in jail with defendant after his arrest in Texas and defendant admitted to shooting a person following an argument over car parts and a debt. Garza also testified that defendant said, "I don't let nobody f* * * me over or my family." Garza recalled that defendant was confident that his family would either pay to get him out of trouble or help him flee, and that defendant explained his mother had previously helped him avoid punishment for beating a person with a hammer at a liquor store.
>
> Defendant was charged with first-degree murder, MCL 750.316, and felony-firearm. The trial court instructed the jury that it could also consider the lesser offense of second-degree murder. Following trial, the trial court noted that there had been threats and comments causing the court to "[r]emove people from both families from the courtroom and from the building. And, I mean, it's just been ridiculous." Trial counsel stated she had "never seen a trial quite like this, Judge, where there's so much animus, so many fights, so many disruptions...." The prosecutor added there had been death threats. The jury ultimately convicted defendant of second-degree murder and felony-firearm.

*People v. Tomaz*, No. 318663, 2015 WL 1814043, at *1-2 (Mich. Ct. App. Apr. 21, 2015) (footnotes omitted). The Michigan Court of Appeals affirmed petitioner's conviction. *Id.* at *11.

Petitioner filed an application for leave to appeal to the Michigan Supreme Court. The Michigan Supreme Court remanded the matter to the trial court in light of that court's decision in *People v. Lockridge*, 498 Mich. 358; 870 N.W.2d 502 (Mich. 2015), because the jury did not find the facts to support the scoring of the sentencing guidelines beyond a reasonable doubt and petitioner did not admit to these facts. On remand, the trial judge was to determine whether he would have imposed a materially different sentence but for the constitutional error. The Michigan Supreme Court denied petitioner leave to appeal regarding his remaining issues. *See People v. Tomaz,* 499 Mich. 933, 879 N.W.2d 251 (2016).

On remand, the trial judge issued an opinion concluding that he would not have

imposed a materially different sentence and affirmed the original sentence. *See People v. Tomaz*, No. 13-001199-01-FC (Wayne Cty. Cir. Ct. Aug. 19, 2016).

In the instant action, petitioner seeks a writ of habeas corpus on the following grounds:

> I. Where the prosecution failed to establish that key witness, Dallas police Sgt. Steven David, was unavailable to testify, use of his preliminary examination testimony at trial deprived Haider Tomaz of his Sixth Amendment right to confront the witnesses against him and violated the rule against hearsay.
>
> II. [Tomaz's] right to silence, right to counsel and his right to a fair trial by the introduction of testimony that he, during a post-arrest custodial interrogation, asked for an attorney and exercised his right to remain silent.
>
> III. Where the trial court permitted the prosecution to offer in its case in chief evidence that [Tomaz] had allegedly committed a completely unrelated violent assault, based upon the theory that this was relevant to the credibility of a prosecution witness; where credibility is not a proper basis for the admission of MRE 404(b) evidence; where the evidence was not admissible for any proper purpose; and where the evidence did not tend to identify [Tomaz] as the perpetrator, and did not show a common scheme or plan, and where the evidence was more prejudicial than probative, as it raised an improper inference that [Tomaz] had a propensity to engage in violent conduct; [Tomaz] was deprived of his right to a trial conducted in conformance with the Michigan rules of evidence, and of his due process right to a fair trial; and a new trial must be granted.
>
> IV. Mr. Tomaz should be granted a new trial because the trial court allowed the prosecution to present improper lay opinion testimony by police officer that the vehicle seen in two video tapes is a Cadillac Escalade, where this testimony impermissibly encroached on the province of the jury.
>
> V. The trial court violated [Tomaz's] due process right to present a defense by declining to instruct the jury on voluntary manslaughter as a lesser offense, where there was evidence of provocation.
>
> VI. The detective-in-charge of this case together with courtroom and

courthouse deputies improperly ordered family and supporters of Mr. Tomaz to leave the courtroom, or barred them from entering the court building, during the last three days of the trial, including the jury verdict, in violation of the constitution's guarantee of a public trial.

VII. An evidentiary hearing should be granted where Mr. Tomaz has submitted significant evidence establishing that his state and federal constitutional to the effective assistance of counsel were violated and he should have a new trial where trial counsel repeatedly performed in a deficient manner, by failing to lodge appropriate objections and failing to request appropriate jury instructions, which deprived Mr. Tomaz of a fair trial.

VIII. Even if no single assignment of error is sufficient for reversal, the totality of trial errors denied Mr. Tomaz a fair trial.

IX. The trial court violated [Tomaz's] due process rights by scoring sentencing guideline offense variables and determining [Tomaz's] minimum sentence based on disputed facts that the prosecutor did not charge and prove beyond a reasonable doubt.

## II. Standard of Review

The following standard applies in federal habeas cases:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d). "A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court

and nevertheless arrives at a result different from [that] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)); *see also Bell v. Cone*, 535 U.S. 685, 694 (2002). "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also Bell*, 535 U.S. at 694. However, "[i]n order for a federal court find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21; *see also Williams*, 529 U.S. at 409. "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 559 U.S. 766, 773 (2010) (quoting *Lindh*, 521 U.S. at 333 n.7).

The United States Supreme Court has held that "a state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011). The Court emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* Pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Id.* Thus, in order to obtain federal habeas relief, a state prisoner must show that the state court's rejection of his claim "was so

6

lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.*

Section 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with clearly established federal law as determined by the Supreme Court at the time the state court renders its decision. *Williams*, 529 U.S. at 412; *see also Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009). Section 2254(d) "does not require a state court to give reasons before its decision can be deemed to have been adjudicated on the merits." *Harrington*, 131 S. Ct. at 785 (internal quotation marks omitted). Furthermore, it "does not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002). While the requirements of "clearly established law" are to be determined solely by Supreme Court precedent, the decisions of lower federal courts may be useful in assessing the reasonableness of the state court's resolution of an issue. *See Stewart v. Erwin*, 503 F.3d 488, 493 (6th Cir. 2007).

Further, a state court's factual determinations are entitled to a presumption of correctness on federal habeas review. 28 U.S.C. § 2254(e)(1). A petitioner may rebut this presumption with clear and convincing evidence. *See Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998).

### III. Discussion

**A. Claim 1: The Confrontation Clause claim**

Petitioner first contends that the trial judge violated his Sixth Amendment right to

7

confrontation by admitting Detective David's preliminary examination testimony at trial after declaring him unavailable to testify. The trial judge's ruling was based on the fact that David was hospitalized in Texas and required surgery for a herniated disc and would need time to recover from the surgery. Petitioner argues that the prosecutor failed to offer sufficient proof, such as a doctor's note, to show that David was hospitalized for a herniated disc and the trial court therefore erred in finding him to be unavailable to testify based solely upon the prosecutor's assertion. The Michigan Court of Appeals rejected this portion of petitioner's claim as abandoned on appeal because petitioner failed to cite to any case law in support of his argument that something other than a prosecutor's statement is required to establish that a witness is unavailable to testify. *Tomaz*, 2015 WL 1814043, at *3. Respondent argues that this portion of petitioner's claim is procedurally defaulted.

Under Michigan law, a party who fails to develop an argument or cite authority in support of a claim waives appellate review of the issue. *See People v. Griffin*, 235 Mich. App. 27, 45, 597 N.W.2d 176 (1999). A state court conclusion that an issue was waived is considered a procedural default. *See Shahideh v. McKee*, 488 F. App'x 963, 965 (6th Cir. 2012). Likewise, a claim that is abandoned on appeal is considered procedurally defaulted. *See Fitchett v. Perry*, 644 F. App'x 485, 489 (6th Cir. 2016).

When the state courts rely on a valid state procedural bar, federal habeas review is also barred unless petitioner can demonstrate "cause" for the default and actual prejudice as a result of the alleged constitutional violation, or can demonstrate that failure to consider the claim will result in a "fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750-51 (1991). If petitioner fails to show cause for his procedural default, it is unnecessary for the court to

reach the prejudice issue. *Smith v. Murray*, 477 U.S. 527, 533 (1986). However, in an extraordinary case, where a constitutional error has probably resulted in the conviction of one who is actually innocent, a federal court may consider the constitutional claims presented even in the absence of a showing of cause for the procedural default. *Murray v. Carrier*, 477 U.S. 478, 479-80 (1986). To be credible, such a claim of innocence requires a petitioner to support the allegations of constitutional error with new, reliable evidence that was not presented at trial. *See Schlup v. Delo*, 513 U.S. 298, 324 (1995).

In the present case, petitioner has offered no reason for his failure to properly exhaust this portion of his first claim. Because he has not demonstrated any cause for his procedural default, the Court need not address the prejudice issue. Additionally, petitioner has not presented any new, reliable evidence to support any assertion of innocence which would allow the Court to consider this portion of his first claim.

Petitioner further claims that his right to confrontation was violated because the prosecutor failed to establish that David's upcoming surgery or herniated disc prevented him from traveling to Michigan for the trial or that the prosecutor had undertaken all efforts to assure his appearance at trial.

As this Court has previously explained,

> [w]hen prosecutors seek to admit a nontestifying witness' preliminary hearing testimony, the Confrontation Clause requires two things: first, the prosecution must establish that the declarant is "unavailable" by showing that prosecutorial authorities have made a good-faith effort to obtain the declarant's presence at trial, and, second, to satisfy the "indicia of reliability" requirement, the prosecution must demonstrate that the defendant had an adequate opportunity to cross-examine the declarant at the preliminary examination.

*Pillette v. Berghuis,* 630 F. Supp. 2d 791, 804 (E.D. Mich. 2009), *rev'd on other grds,* 408 F. App'x.

873 (6th Cir. 2010). The test regarding the first condition is whether the prosecutor made a reasonable, good faith effort to produce the witness live. *See Hardy v. Cross*, 565 U.S. 65, 70 (2011) (*citing Ohio v. Roberts*, 448 U.S. 56, 74 (1980)). What is required is "a good-faith effort, . . . not an ends-of-the-earth effort." *United States v. Cheung*, 350 F. App'x 19, 23 (6th Cir. 2009).

The Michigan Court of Appeals stated the correct legal standard and applied it reasonably under the circumstances presented. As that court noted, the trial judge was permitted – particularly in light of the fact that petitioner offered no information to the contrary – to rely on the truth of the prosecutor's representation that David was unavailable because "he was hospitalized and scheduled for surgery during trial, and he would [be] recovering for weeks." *Tomaz*, 2015 WL 1814043, at *3-4. The second prong for admission of David's preliminary examination testimony is also satisfied because petitioner had an opportunity to cross examine him at that proceeding. Petitioner was represented by counsel who was given a full opportunity to question David. Accordingly, petitioner is not entitled to habeas relief on this claim.

### B. Claims 2 and 7: The post-*Miranda* silence and ineffective assistance of counsel claims

In his second claim, petitioner argues that his constitutional rights were violated by the introduction of his post-*Miranda* silence. In his related seventh claim, petitioner contends that his trial counsel was ineffective for failing to object to the admission of this evidence.

At the trial, petitioner's attorney read into the record the following exchange from petitioner's preliminary examination:

> DEFENSE ATTORNEY: Okay. Detective, at what point . . . in the interview did Mr. Tomaz ask for an attorney?
>
> DAVID: About 1:40 when he asked if he was under arrest and what for when I told him that maybe he better speak to an attorney.

10

> DEFENSE ATTORNEY: Okay. So you let him know immediately he was in custody and not going anywhere?
>
> DAVID: Correct.
>
> DEFENSE ATTORNEY: Okay. And once he indicated to you that he wanted to talk to an attorney what, if anything, did you do?
>
> DAVID: The interview ended.

Preliminary Examination Tr. 1/15/13, p. 31.

The Michigan Court of Appeals ruled that petitioner's post-*Miranda* silence claim was waived because defense counsel invited the error by asking the questions. *See Tomaz*, 2015 WL 1814043, at *4. This ruling is not an unreasonable application of Supreme Court precedent because a defendant in a criminal case cannot complain of error which he has invited. *See Shields v. United States*, 273 U.S. 583, 586 (1927); *Fields v. Bagley,* 275 F.3d 478, 486 (6th Cir. 2001). Petitioner's counsel's questioning at the preliminary examination opened the door to the David's testimony about petitioner's post-*Miranda* silence.

Further, as the Michigan Court of Appeals noted in rejecting petitioner's related ineffective assistance of counsel claim, David's testimony was the sole reference to petitioner's post-*Miranda* silence. Petitioner did not testify and he was not impeached with his post-*Miranda* silence. The prosecutor did not mention petitioner's silence in her opening or closing arguments, and the trial judge instructed the jury that petitioner's silence could not be used against him as evidence of his guilt. Therefore, petitioner has failed to show he was prejudiced either by his attorney inviting the error at the preliminary examination or by his trial attorney in reading this testimony into the record. Petitioner is not entitled to relief on his second and seventh claims.

**C. Claims 3 and 4: The prior bad acts evidence/improper lay opinion claims**

In his third claim, petitioner contends that his constitutional rights were violated by the admission of other-acts evidence involving petitioner's assault of another person at a liquor store. Petitioner claims that this evidence was more prejudicial than probative and was offered only to show his propensity to commit the murder, in violation of M.R.E. 404(b). In his fourth claim, petitioner argues that the trial judge abused his discretion by permitting Sergeant Wellman to offer a lay opinion that the vehicle in the security footage was a Cadillac Escalade with a model year between 2002 and 2006. Petitioner further argues that Sergeant Wellman invaded the province of the jury by essentially offering lay opinion testimony that petitioner was guilty.

These are the sort of state law evidentiary issues that generally are not subject to federal habeas review. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Seymour v. Walker,* 224 F.3d 542, 552 (6th Cir. 2000). The Michigan Court of Appeals concluded that evidence of the prior liquor store assault was relevant and admissible to corroborate Garza's testimony regarding petitioner's statements to Garza while the two were cell mates. Wellman's testimony concerning the make, model and approximate year of the SUV was relevant and based on his review of the security camera footage. These evidentiary objections raise no issues that are cognizable on habeas review. Petitioner is not entitled to relief on his third or fourth claim.

**D. Claim 5: The lesser included offense instruction claim**

Petitioner next argues that the trial judge abused his discretion in refusing to instruct the jurors on the lesser included offense of voluntary manslaughter.

As this Court has previously noted,

> The Supreme Court has declined to decide whether due process requires the giving of jury instructions on lesser-included offenses in non-capital cases. *See Beck v. Alabama*, 447 U.S. 625, 638 n. 14, 100 S.Ct. 2382, 65 L.Ed.2d 392 (1980). The Sixth Circuit

12

> has interpreted *Beck* to mean that "the Constitution does not require a lesser-included offense instruction in non-capital cases." *Campbell v. Coyle*, 260 F.3d 531, 541 (6th Cir.2001).

*Adams v. Smith*, 280 F. Supp. 2d 704, 717 (E.D. Mich. 2003) (footnote omitted). Accordingly, petitioner is not entitled to habeas relief on this claim.

Moreover, the Michigan Court of Appeals rejected petitioner's claim on the grounds that a rational view of the evidence did not support the giving of an instruction on the lesser included offense of voluntary manslaughter because there was insufficient evidence that petitioner killed the victim in the heat of passion caused by an adequate provocation. *See Tomaz*, 2015 WL 1814043, at *8–9. Because the evidence in this case did not rationally support a finding that petitioner was acting in the heat of passion when he shot the victim, the failure to instruct the jury on the lesser offense of voluntary manslaughter was not erroneous, even if this claim were cognizable.

### E. Claim 6: The denial of a public trial claim

Petitioner next contends that his right to a public trial was violated when his family members were ordered removed from the courtroom for the last three days of the trial. The Michigan Court of Appeals disposed of this argument as follows:

> Again, to preserve a claim of error for appellate review, a defendant must generally make a timely assertion of the right before the trial court. *People v. Vaughn*, 491 Mich. 642, 653–654; 821 NW2d 288 (2012). Defendant did not assert, on the record in the trial court, his right to a public trial. Therefore, this issue is forfeited. As a result, "in order to receive relief on his forfeited claim of constitutional error, defendant must establish (1) that the error occurred, (2) that the error was 'plain,' (3) that the error affected substantial rights, and (4) that the error either resulted in the conviction of an actually innocent defendant or seriously affected the fairness, integrity, or public reputation of judicial proceedings." *Id*. at 664–665, *citing People v. Carines*, 460 Mich. 750, 763; 597 NW2d 130 (1999).

13

> The right to a public trial is guaranteed by the Sixth Amendment of the United States Constitution and Article I, § 20 of the Michigan Constitution. *Vaughn*, 491 Mich. at 650. Although the right is not absolute and may be limited, *id.* at 653, to facilitate appellate review of whether the trial court's decision to close the courtroom was proper, a trial court must state the interest that justified the closure and articulate specific findings that explain why that interest justified the closure. *People v. Kline*, 197 Mich.App 165, 169; 494 NW2d 756 (1992). Further, the closure must be no broader than needed to protect the interest justifying it, that is, it must be "narrowly tailored" to satisfy the purpose for which closure was ordered. *Id.* at 169, 171. This Court distinguished partial closures from full closures of courtrooms to the public. *Id.* at 169170. "[T]he effect of a partial closure of trial does not reach the level of a total closure and only a substantial, rather than compelling reason for the closure is required." *People v. Russell*, 297 Mich.App 707, 720; 825 NW2d 623 (2012), *citing Kline*, 197 Mich.App at 170.

*Tomaz*, 2015 WL 1814043, at *9 (footnote omitted).

The Michigan Court of Appeals' decision on this issue was not an unreasonable application of Supreme Court precedent. Petitioner waived his right to a public trial by not objecting contemporaneously. *See Peretz v. United States*, 501 U.S. 923, 936–37 (1991); *Johnson v. Sherry*, 586 F.3d 439, 444 (6th Cir. 2009). Even if petitioner had made a timely objection, the Michigan Court of Appeals correctly noted that the trial judge was permitted to order a partial closure under the circumstances. *See United States v. Simmons*, 797 F.3d 409, 413 (6th Cir. 2015) (allowing partial closure to certain spectators when necessary for safety reasons). Specifically, the Michigan Court of Appeals reasonably determined that the state trial offered substantial reasons for the partial closure. Petitioner is not entitled to relief on this claim.

### F. Claim 8: Cumulative errors claim

In his eighth claim, petitioner argues that he was denied a fair trial because of cumulative error. The Sixth Circuit has noted that the United States Supreme Court "has not held

14

that distinct constitutional claims can be cumulated to grant habeas relief." *Lorraine v. Coyle,* 291 F.3d 416, 447 (6th Cir. 2002). Petitioner is not entitled to relief on this claim.

### G. Claim 9: The sentencing guidelines claim

Finally, petitioner argues that the trial court violated his due process rights by scoring sentencing guideline offense variables and determining his minimum sentence based on disputed facts that the prosecutor did not charge and prove beyond a reasonable doubt.

Petitioner's claim that the state trial court incorrectly scored or calculated his sentencing guidelines range under the Michigan sentencing guidelines is not cognizable on habeas review. *See Kissner v. Palmer*, 826 F.3d 898, 904 (6th Cir. 2016)*; Tironi v. Birkett*, 252 F. App'x 724, 725 (6th Cir. 2007)*.* Nor is the balance of this claim reviewable on habeas because "*Alleyne* dealt with judge-found facts that raised the mandatory minimum sentence under a statute, not judge-found facts that trigger an increased guidelines range," which is what occurred in this case. *United States v. Cooper*, 739 F.3d 873, 884 (6th Cir. 2014).

## IV. Conclusion

For the reasons stated above,

IT IS ORDERED that petitioner's application for a writ of habeas corpus is denied.

IT IS FURTHER ORDERED that no certificate of appealability shall issue because petitioner has not made a substantial showing of the denial of a constitutional right.

IT IS FURTHER ORDERED that petitioner may not proceed on appeal in forma pauperis, as any appeal in this matter would be frivolous.

s/Bernard A. Friedman
BERNARD A. FRIEDMAN
SENIOR UNITED STATES DISTRICT JUDGE

Dated: November 1, 2017
Detroit, Michigan

CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S Mail addresses disclosed on the Notice of Electronic filing on November 1, 2017.

s/Teresa McGovern
Case Manager Generalist